IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIT UW LIMITED, FOR AND ON BEHALF OF LLOYD'S SYNDICATE 2987, | No. 18-cv-04325 |
| Plaintiff, | Judge John F. Kness |
| v. | |
| 1013 N. HONORE, LLC, ALEKSANDRA DUBOVIK, and DB HOMES, Inc., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Brit UW Limited, an insurer, seeks a declaration that it had no duty to defend or indemnify Defendants 1013 N. Honore, LLC, Aleksandra Dubovik, and DB Homes, Inc., in a now-dismissed Illinois state court action alleging property damage sustained at a condominium unit Defendants built and sold. Both sides have filed motions seeking summary judgment in their favor based on the relevant language of the policy Plaintiff issued.

As explained below, because the allegations in the underlying complaint establish that Defendants are excluded from policy coverage, Plaintiff owed no duty to defend Defendants in the underlying state litigation. Plaintiff's motion for summary judgment is therefore granted, Defendants' motion for summary judgment

is denied, and the Court enters a separate final declaratory judgment in Plaintiff's favor.

I.  **BACKGROUND**

In 2013, Defendants 1013 N. Honore, LLC, Aleksandra Dubovik, and DB Homes, Inc., developed and built a condominium building in Chicago, Illinois. (Dkt. 1-3 ¶ 1; Dkt. 58 ¶ 9.) Plaintiff Brit UW Limited issued a general liability insurance policy to Defendant 1013 N. Honore, LLC, in November 2013. (Dkt. 58 ¶¶ 43–44.)

Steven Garner purchased the basement unit of the condominium on September 21, 2014. (*Id.* at 12.) Construction on the building was completed in October 2014, before Garner moved into the unit on October 31, 2014. (Dkt. 58 ¶ 10; Dkt. 77 at 8.) In November 2014, Garner notified Defendants that water had intruded into his unit. (Dkt. 58 ¶ 4.) Garner complained of numerous instances of water intrusion through July 2017; Garner reported leaks in the foundation, problems with the drain tile system, and failure of the sump pump. (*Id.* ¶¶ 20, 23.)

On March 23, 2018, the Board of Managers of 1013 N. Honore Condominium Association (the "Board") sued Defendants in the Circuit Court of Cook County, Illinois, alleging that, at the time the condominium units were sold, the building "contained a number of hidden and latent defects." (Dkt. 1-3 ¶ 21.) According to the Board's complaint (referred to here as the "underlying case"),[1] Defendants knew of these issues but engaged in "misrepresentations and acts of concealment." (*Id.* ¶ 62.)

---

[1] The parties explain that the underlying case was voluntarily dismissed in November 2022. (Dkt. 88.) This suit remains live, however, because, if Plaintiff had a duty to defend Defendants in the underlying case, Plaintiff would still be liable for Defendants' costs of defense.

2

Plaintiff then brought the present diversity-jurisdiction action seeking a declaratory judgment that Plaintiff has no duty to defend Defendants in the underlying case. (Dkt. 27 at 24.) Plaintiff and Defendants now move for summary judgment. (Dkt. 55, 59.)

## II. STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007). Summary judgment requires a nonmoving party "to respond to the moving party's properly supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. Of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (cleaned up).

### B. Duty to Defend

Under Illinois law, "[t]he construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the

3

court which are appropriate subjects for disposition by way of summary judgment." *Crum & Forster v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1077 (Ill. 1993). An insurer has a duty to defend when " 'the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage provisions.' " *Mkt. St. Bancshares, Inc. v. Fed. Ins. Co.*, 962 F.3d 947, 951–52 (7th Cir. 2020) (quoting *Crum & Forster*, 620 N.E.2d at 1079); *see also Westfield Ins. Co. v. Nat'l Decorating Serv.*, 863 F.3d 690, 695 (7th Cir. 2017). Courts must "liberally construe the underlying complaint and the insurance policies in favor of the insured." *Westfield*, 863 F.3d at 695. Further, "[t]he duty to defend is triggered . . . even if only one of several theories of recovery alleged in the complaint falls within the potential coverage of the policy." *Id.* (quoting *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 315 (Ill. 2006)).

### III. DISCUSSION

Plaintiff argues that the damage in the underlying complaint is not "property damage" sustained following an "occurrence." (Dkt. 56 at 3–4.) And even if it is, Plaintiff says, the policy exclusions preclude coverage. (*Id.*) These arguments are addressed in turn.

#### A. "Property Damage"

Plaintiff argues first that the underlying complaint did not allege "property damage" as that term is defined in the insurance policy. (*Id.* at 7.) The policy defines "property damage," in part, as "[p]hysical injury to tangible property, including all resulting loss of use of that property." (Dkt. 1-2 at 24–25.) Plaintiff's principal

4

argument is that the underlying complaint sought the cost of repair or replacement of defective work, and Illinois law categorizes such relief as a remedy for economic loss, not property damage. (*Id.* at 4.) Plaintiff therefore contends that the underlying complaint alleged economic loss instead of property damage, and economic loss claims "are not intended to be covered by a general liability insurance policy" like the one in question. (*Id.* at 8.)

Defendants disagree that the underlying complaint is cabined to a claim of economic loss. (Dkt. 77 at 2.) Defendants point to several portions of the underlying complaint specifically alleging property damage. (*Id.* at 3–4 ("[T]he Association has sustained damages to personal property.").)

It may be true that a portion of the underlying complaint sought a remedy for economic loss, but the duty to defend is triggered if even one theory of recovery "falls within the potential coverage of the policy," and the Court is to construe both the Complaint and the policy liberally. *Westfield*, 863 F.3d at 695. Given the portions of the underlying complaint that Defendants have cited, the underlying complaint alleges property damage sufficient to trigger a duty to defend.

### B. "Occurrence"

Plaintiff next argues that any property damage did not result from an "occurrence" as defined by the policy. (Dkt. 56 at 5–6.) The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Dkt. 1-2 at 24.) Plaintiff contends that the "natural and ordinary consequences of an act do not constitute an accident," and because the

5

flooding and resulting damage was a natural and ordinary consequence of Defendants' negligence, any damage did not result from an occurrence. (*Id.* at 8–9 (citing *Stoneridge Dev. Co. Inc. v. Essex Ins. Co.*, 888 N.E.2d 633, 651 (Ill. App. Ct. 2008).)

Defendants contend that the alleged property damage resulted from an "occurrence." (Dkt. 77 at 5.) Defendants argue that "negligently performed work or defective work can give rise to an 'occurrence' under a [comprehensive general liability] policy." (*Id.* at 6–7) (quoting *Lyerla v. AMCO Ins. Co.*, 536 F.3d 684, 690 (7th Cir. 2008).

In *Westfield Ins. Co. v. Nat'l Decorating Serv., Inc.*, an insured subcontractor was hired to paint the exterior of a newly constructed condominium building with a waterproof sealant. 863 F.3d 690, 697 (7th Cir. 2017). The owners of the building sued the contractor, subcontractor, and others alleging significant water damage to the property. *Id.* at 693–94. In turn, the general contractor sued the subcontractor and alleged, among other things, that the subcontractor's negligence caused the alleged water damage. *Id.* at 694. Separately, the insurance company sought a declaration that it had no duty to defend or indemnify the subcontractor; one argument of the insurer was that the policy precluded coverage because the alleged water damage was not the result of an "occurrence," which was defined under the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.*

6

On appeal, the Seventh Circuit rejected the insurer's argument. As the court held, negligent or defective work can constitute an "occurrence" if "the policy defines an 'occurrence' to include not only an accident but also 'continuous or repeated exposure to conditions.'" *Id.* at 697 (quoting *Lyerla v. AMCO Ins. Co.*, 536 F.3d 684, 690 (7th Cir. 2008)). Given the policy's definition of "occurrence," the underlying complaint's allegation of negligence was "sufficient to satisfy the policy's occurrence requirement when determining whether there is a duty to defend at this juncture in the litigation." *Id.*

In the present case, the underlying complaint alleged negligence or defective work. (*See, e.g.*, Dkt. 1-3 ¶ 62.) And as in *Westfield*, the policy in question defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Dkt. 1-2 at 24.) Defendants' alleged negligence leading to the damaging water intrusion is therefore at least potentially an "occurrence" under the policy.

### C. Exclusions

As explained above, the underlying complaint sufficiently alleged that "property damage" within the meaning of the policy resulted from an "occurrence" as defined by the policy. Plaintiff argues, however, that at least one of the policy's exclusions applies and prevents coverage. (Dkt. 56 at 6.) In particular, Plaintiff argues that coverage is excluded under the policy's "products-completed operations hazard" exclusion. (*Id.* at 7.) That provision excludes from coverage "all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arise out

7

of 'your product' or 'your work' except: . . . Work that has not yet been completed . . . ."

(Dkt. 1-2 at 24.)

> "[Y]our work" will be deemed completed at the earliest of the following times:
>
> (a) When all of the work called for in your contract has been completed.
>
> (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
>
> (c) When that part of the work done at a job site has been put to its intended use by any person or organization other that another contractor or subcontractor working on the same project.

*Id.*

Plaintiff argues that the property damage alleged in the underlying complaint occurred after Defendants' work was completed and therefore is excluded from coverage under subsections (a) and (c). (Dkt. 56 at 7–8.) Plaintiff first argues that Defendants' work was "completed" within the meaning of subsection (a), noting that Defendant Dubovik testified that construction was completed before the first resident moved in. (Dkt. 75 ¶ 10.) Contrary to Plaintiff's argument, Defendants argue that, when the property damage occurred, "construction of the unit was not complete" because the general contractor still had to investigate "issues with the unit" and because "punch-list work and warranty items" remained incomplete. (Dkt. 77 at 8–9.) A genuine issue of fact remains as to whether "all of [Defendants'] work called for in [the] contract ha[d] been completed" before the alleged property damage occurred (Dkt. 1-2 at 24), and that issue is material. As a result, the Court cannot hold at this juncture that subsection (a) serves to exclude coverage.

8

Plaintiff also argues that Garner's moving in constituted the project being put to its intended use, thus triggering subsection (c) of the exclusion. (Dkt. 56 at 7–8 (citing *Nautilus Ins. Co. v. Board of Dir. Of Regal Lofts Condominium Assoc.*, 764 F.3d 726, 735 (7th Cir. 2014)).) In *Nautilus*, on which Plaintiff places significant weight, the Seventh Circuit explained that a resident moving personal property into a condominium unit "unambiguously establishes" that the unit is put to its intended use. 764 F.3d at 735. A developer in *Nautilus* had converted a building into condominiums; after residents complained of water intrusion, the condominium owners sued the developer and included a negligence claim. *Id.* at 728–30. That developer tendered the suit to its insurer, but the insurance company denied coverage and instead sought a declaration that it had no duty to defend or indemnify the developer. *Id.* at 730. As here, the relevant policy contained a completed-products exclusion that defined "completion" as occurring "[w]hen that part of the work done at a job site has been put to its intended use . . . ." *Id.* at 734. *Nautilus* concluded that the condominium's individual homeowners' acts of moving into the units constituted "putting the condominium units . . . to their intended use, thereby taking those units out of the scope of coverage of [the intended use] subclause." *Id.*

Defendants argue that *Nautilus* does not control because "[t]he facts and circumstances in *Nautilus* are sufficiently different than the instant matter and should not be considered . . . ." (Dkt. 77 at 7.) Defendants first contrast the delay in *Nautilus* of approximately eight years between water intrusion and filing of the claim for insurance coverage with the delay in the present case of approximately one and

9

half years; Defendants deem the delay in *Nautilus* "unreasonable" but brand their delay as reasonable. (*Id.* at 8, 12.) Defendants also argue that the condominium board in *Nautilus* claimed damage only to the building itself, where the board in this case also alleged damage to personal property. (*Id.* at 8.)

Those factual distinctions are insufficient to render *Nautilus* immaterial here. Although Defendants argue that "unreasonable delay" by the condominium board in *Nautilus* was sufficient for the Seventh Circuit to find no coverage (Dkt. 77 at 8), the opinion did not mention that delay or in any way explicitly base its conclusion on it. And Defendants' contention that *Nautilus* did not involve an allegation of damage to personal property is misplaced, as the Seventh Circuit noted that the "second amended complaint . . . alleged that the Developer's negligence had caused damages to personal property within the building, in addition to the interior of the building and the building itself." *Id.* at 730.

Plaintiff's intended-use clause, as interpreted in effectively identical form by the Seventh Circuit in *Nautilus*, is controlling and requires a declaration of judgment in Plaintiff's favor. All of the damage alleged in the underlying complaint occurred after the Garner move-in (Dkt. 1-3 ¶ 24)—that is, after the property had been put to its intended use and Defendants' work had been completed. *Nautilus*, 764 F.3d at 735. As a result, the "products-completed operations hazard" exclusion excludes coverage of the property damage alleged in the underlying complaint, meaning that Plaintiff had no duty to defend Defendants in the underlying case.[2]

---

[2] As a separate basis for its contention that no duty to defend arose, Plaintiff argues that Defendants failed to provide timely notice to Plaintiff of the water intrusion. (Dkt. 56 at 9.)

10

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (Dkt. 55) is granted and Defendants' motion for summary judgment (Dkt. 59) is denied. Plaintiff had no duty to defend Defendants in the underlying case.

SO ORDERED in No. 18-cv-04325.

Date: March 25, 2024

JOHN F. KNESS
United States District Judge

---

There remain genuine issues of fact, however, as to whether notice was timely, including when Defendants themselves understood that the water intrusion was a result of construction defects. (*Compare* Dkt. 56 at 10, *with* Dkt. 77 at 11.) But because the policy exclusions preclude coverage, timeliness of notice is irrelevant to the conclusion that Plaintiff has no duty to defend.